**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000514
30-NOV-2017
10:27 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


CRANDALL PENAFLOR, Plaintiff-Appellant,
v.
BOYD P. MOSSMAN, RICHARD A. PRIEST, JR., THOMAS P. GRISWOLD,
CITY & COUNTY OF MAUI, A MUNICIPAL CORPORATION, ARE SUED IN
THEIR INDIVIDUAL AND OFFICIAL CAPACITIES, Defendants-Appellees.


NO. CAAP-15-0000514

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 14-1-0187(2))

NOVEMBER 30, 2017

NAKAMURA, CHIEF JUDGE, AND FUJISE AND LEONARD, JJ.


OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

Plaintiff-Appellant Crandall Penaflor (Penaflor) was convicted of two counts of first-degree sexual assault, first-degree burglary, kidnapping, and first-degree terroristic threatening. Penaflor filed a direct appeal of these convictions and numerous post-conviction challenges, but was unsuccessful in overturning these convictions.[1]

---

[1] Penaflor was originally convicted in 1991 of two counts of first-degree terroristic threatening. In 2002, this court reversed one of Penaflor's two first-degree terroristic threatening convictions on the ground that it merged with his kidnapping conviction. State v. Penaflor, No. 23939, 2002 WL 31375566, at *1 (Hawai'i App. Oct. 21, 2002) (SDO).

In 2014, Penaflor, appearing pro se, filed a "State Tort Civil Complaint" (Civil Tort Complaint) against participants in his criminal case: the presiding judge, the Deputy Prosecuting Attorney, his appointed defense counsel, and the County of Maui (County). The Circuit Court of the Second Circuit (Circuit Court)[2] dismissed Penaflor's Civil Tort Complaint. It also entered an order declaring Penaflor to be a vexatious litigant and imposing prefiling restrictions on Penaflor's ability to file new litigation.

On appeal, Penaflor contends that the Circuit Court erred in: (1) dismissing his Civil Tort Complaint; and (2) declaring him to be a vexatious litigant pursuant to Hawaii Revised Statutes (HRS) Chapter 634J.

This appeal presents the question of whether Penaflor, who has failed to overturn his convictions, can file a civil tort action raising claims that challenge the validity of his convictions. We conclude that the answer to this question is "no." We therefore affirm the Circuit Court's dismissal of Penaflor's Civil Tort Complaint.

With respect to the Circuit Court's vexatious litigant order pursuant to HRS Chapter 634J, we conclude that the Circuit Court erred in issuing this order. In finding that Penaflor satisfied the criteria for a vexatious litigant, the Circuit Court apparently relied upon Penaflor's prior filing of unsuccessful Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (2006) and federal habeas corpus petitions. However, Penaflor's prior HRPP Rule 40 and federal habeas corpus petitions do not constitute "civil actions or proceedings" for purposes of HRS Chapter 634J, and therefore, the Circuit Court could not rely on these petitions to support its order declaring Penaflor to be a vexatious litigant. Because it appears that the Circuit Court relied upon an improper basis in issuing its vexatious litigant order, and because the record does not support a vexatious litigant finding, we vacate the vexatious litigant order.

---

[2] The Honorable Peter T. Cahill presided.

I.

A.

On May 18, 1990, a Maui grand jury returned an indictment against Penaflor, charging him with: first-degree burglary of the residence of D.C. (Count 1); first-degree terroristic threatening of D.C. with the use of a handgun (Count 2); first-degree terroristic threatening of K.S. with the use of a handgun (Count 3); kidnapping of D.C. (Count 4); first-degree robbery of D.C. with a handgun (Count 5); first-degree sexual assault of D.C. by strong compulsion, to wit, fellatio (Count 6); and first-degree sexual assault of D.C. by strong compulsion, to wit, vaginal intercourse (Count 7). After a jury trial, Penaflor was found guilty of Counts 1, 2, 3, 4, 6, and 7.

The presiding judge at Penaflor's trial was the Honorable Boyd P. Mossman (Judge Mossman), the Deputy Prosecuting Attorney in Penaflor's case was Richard A. Priest, Jr. (Priest), and Penaflor's appointed defense counsel was Thomas P. Griswold (Griswold). The Circuit Court sentenced Penaflor to consecutive terms of imprisonment as to each count of conviction, for a total term of seventy years. The Circuit Court entered its Judgment on September 10, 1991.

Penaflor filed a direct appeal from his Judgment. On August 26, 1992, the Hawai'i Supreme Court issued a memorandum opinion affirming the September 10, 1991, Judgment. State v. Penaflor, No. 15629 (Hawai'i Aug. 26, 1992) (mem.).

B.

On January 22, 1998, Penaflor filed, pro se, an HRPP Rule 40 petition (First Rule 40 Petition). Penaflor sought relief based his claims that: (1) his counsel had provided ineffective assistance; (2) his convictions were obtained through perjured witness testimony; and (3) the jury was biased against him. The Circuit Court denied Penaflor's First Rule 40 Petition without a hearing on the grounds that Penaflor had failed to establish ineffective assistance of counsel and had waived his remaining claims by failing to raise them on direct appeal.

3

Penaflor did not appeal the Circuit Court's order denying his First Rule 40 Petition.

On February 28, 2000, Penaflor filed, pro se, a Motion for Correction of Illegal Sentence pursuant to HRPP Rule 35 (Rule 35 Motion). The Circuit Court denied Penaflor's Rule 35 Motion. On appeal, this court affirmed the Circuit Court's denial of Penaflor's Rule 35 Motion, but noticing plain error, we reversed Penaflor's first-degree terroristic threatening conviction on Count 2, ruling that it merged with his kidnapping conviction on Count 4. State v. Penaflor, No. 23939, 2002 WL 31375566, at *1 (Hawai'i App. Oct. 21, 2002) (SDO).

On September 11, 2006, Penaflor filed, pro se, his second HRPP Rule 40 petition (Second Rule 40 Petition). The Circuit Court denied Penaflor's Second Rule 40 Petition on the grounds that his claims were either previously ruled upon, or had been waived by his failure to raise them in the First Rule 40 Petition. Penaflor appealed the Circuit Court's order denying his Second Rule 40 Petition. On June 24, 2008, this court affirmed the Circuit Court's order, holding that Penaflor failed to present a colorable claim because all the claims in his Second Rule 40 Petition had been waived or previously ruled upon. Penaflor v. State, No. 28527, 2008 WL 2503259, at *1-3 (Hawai'i App. June 24, 2008) (SDO). The Hawai'i Supreme Court denied Penaflor's application for writ of certiorari from this court's decision.

In 2009, the Circuit Court held a resentencing hearing in response to this court's decision to reverse Penaflor's conviction on Count 2. Penaflor was represented by counsel, appeared by telephone, and requested that his sentences be imposed to run concurrently. The Circuit Court issued an Amended Judgment which sentenced Penaflor to the same consecutive terms of imprisonment, minus the five-year term for Count 2 that this court had reversed, resulting in a total term of imprisonment of 65 years. Penaflor appealed from the Amended Judgment. This court affirmed the Amended Judgment, explaining

4

that in reversing Count 2, we did not authorize the Circuit Court to change its prior sentence other than to remove the sentence for Count 2. State v. Penaflor, No. 30313, 2011 WL 716199, at *2 (Hawai'i App. Feb. 25, 2011) (SDO). Penaflor, pro se, filed an application for writ of certiorari with the Hawai'i Supreme Court, raising numerous issues. The supreme court denied Penaflor's application for writ of certiorari. State v. Penaflor, No. SCWC-30313, 2011 WL 2165128 (June 2, 2011).

On January 20, 2012, Penaflor filed, pro se, a second petition for writ of habeas corpus in the United States District Court for the District of Hawai'i (Federal District Court).[3] Penaflor raised two grounds for relief: (1) his consecutive sentences violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and state law; and (2) ineffective assistance of trial and appellate counsel. The Federal District Court denied Penaflor's Apprendi-related claim as procedurally barred and without merit. Penaflor v. Thomas, Civil No. 12-00050 LEK-BMK, 2012 WL 1802468, at *6 (D. Hawai'i May 17, 2012). The Federal District Court denied Penaflor's claim of ineffective assistance of trial and appellate counsel because he failed to show cause for his procedural default and because he failed to demonstrate actual innocence. Id. at *7-8. With respect to actual innocence, the Federal District Court stated: "Penaflor presents no new evidence establishing that he is actually innocent of his crimes, or that it is 'more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt of his guilt.'" Id. at *8.

Penaflor sought reconsideration of the Federal District Court's ruling, alleging extraordinary circumstances and actual innocence. The Federal District Court denied the motion for reconsideration. Penaflor v. Thomas, Civil. No. 12-00050 LEK-BMK, 2012 WL 2685096 (D. Hawai'i July 6, 2012).

---

[3] Penaflor's first petition for writ of habeas corpus, filed after this court had reversed Penaflor's conviction on Count 2, but before the Circuit Court had filed its Amended Judgment, was dismissed by the Federal District Court as premature.

C.

Penaflor appears to have filed, pro se, a civil rights complaint against Judge Mossman, Priest, and Griswold in the Circuit Court on December 11, 2013.[4] The Circuit Court apparently struck the civil rights complaint for lack of jurisdiction because it found that Penaflor's claims were based on federal civil rights statutes.[5]

D.

On March 25, 2014, Penaflor, pro se, filed his Civil Tort Complaint at issue in this appeal against Judge Mossman, Priest, Griswold, and the County (collectively, the "Defendants"). Penaflor's Civil Tort Complaint alleged a number of claims against the Defendants, including malicious prosecution, false imprisonment, and ineffective assistance of counsel. The crux of Penaflor's Civil Tort Complaint was that as the result of the Defendants' acts and omissions, Penaflor was wrongfully convicted and imprisoned. In his prayer for relief, Penaflor requested that a declaratory judgment be issued stating that the Defendants' alleged acts and omissions violated his rights; that an evidentiary hearing be granted "to substantiate [his] claims"; that he be released from custody upon the finding that he was falsely convicted and imprisoned; and that he be awarded compensatory and punitive damages against the Defendants.

Judge Mossman filed a motion to dismiss the Civil Tort Complaint, arguing that Penaflor failed to state a claim for relief against Judge Mossman, and that even if Penaflor stated a

---

[4] A copy of the civil rights complaint is not part of the record in this case. Griswold's counsel filed a declaration asserting that Penaflor had filed the civil rights complaint and that Griswold had moved to dismiss the complaint on the ground that original jurisdiction for the complaint was with the federal district court.

[5] The declaration of Griswold's counsel states that the Circuit Court filed a "Sua Sponte order Striking Plaintiff Crandall Penaflor's Civil Rights Complaint, Filed on December 11, 2013" (Order Striking Complaint), which was attached as an exhibit to the declaration. The attached exhibit states: "IT IS HEREBY ORDERED that Plaintiff Crandall Penaflor's Civil Rights Complaint, filed on December 11, 2013, is stricken. The Court finds that Plaintiff's claims are based on federal civil rights statutes; therefore, this Court lacks jurisdiction over the matter."

6

claim, Judge Mossman was protected by absolute judicial immunity. Griswold filed a motion to dismiss Penaflor's petition for declaratory judgment, a motion to declare Penaflor a vexatious litigant under HRS Chapter 634J, and a motion to dismiss the Civil Tort Complaint.  Priest and the County joined in Griswold's motion to dismiss the petition for declaratory judgment and Griswold's motion to declare Penaflor a vexatious litigant.  In their joinder in Griswold's vexatious litigant motion, Priest and the County also requested that the Circuit Court "dismiss all the parties."  After holding a hearing on these motions, the Circuit Court granted the motions and issued corresponding orders, including an order declaring Penaflor to be a vexatious litigant.[6]  The Circuit Court subsequently entered a Judgment on August 19, 2015, which we construed as dismissing Penaflor's entire Civil Tort Complaint with prejudice.[7]

DISCUSSION

Penaflor argues that the Circuit Court erred by dismissing the Civil Tort Complaint.  As explained below, we conclude that the Circuit Court properly dismissed the Civil Tort Complaint.

Penaflor's claims against Judge Mossman, Priest, and Griswold arose from their respective roles as presiding judge, prosecutor, and defense counsel in Penaflor's criminal prosecution.[8]  Penaflor alleged that as the result of

---

[6] The transcript of the hearing was not included in the record on appeal.  Penaflor's motion to have the Circuit Court provide the transcript to him was denied.

[7] This Judgment provides: "IT IS HEREBY ADJUDGED AND DECREED that the Complaint filed herein on July 29, 2014 is dismissed with prejudice.  Judgment is hereby entered in favor of Defendant Thomas P. Griswold and against the Plaintiff."  By Order dated December 24, 2015, this court construed this Judgment "as dismissing Penaflor's entire complaint with prejudice, thereby resolving all the claims filed by Penaflor in his complaint and entering judgment in favor of all the defendants."  We accordingly denied Judge Mossman's motion to dismiss the appeal for lack of jurisdiction.

[8] Penaflor's claims against the County were apparently based on his contention that it was vicariously liable for the conduct of the other Defendants.  His claims against the County were therefore contingent on his establishing liability on the part of the other Defendants.

Defendants' acts and omissions, he was wrongfully convicted and imprisoned. Penaflor's claims, in effect, constituted a collateral attack on his convictions, for if he prevailed, it would undermine the validity of his convictions.

A.

We conclude that the claims against Judge Mossman were barred by judicial immunity. A judge has absolute immunity from liability for damages arising from his or her judicial actions in a criminal prosecution. Bullen v. Derego, 68 Haw. 587, 591-92, 724 P.2d 106, 109 (1986).

> This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."

Id. at 592 n.3, 724 P.2d at 109 n.3 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967).

Penaflor's claims against Judge Mossman stem wholly from the actions Judge Mossman took and decisions he made in his role as the judge presiding over Penaflor's criminal prosecution. As the presiding judge in Penaflor's criminal case, Judge Mossman's alleged "errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." Id. We conclude that Penaflor's claims against Judge Mossman were barred by Judge's Mossman's absolute judicial immunity. The Circuit Court properly dismissed Penaflor's claims against Judge Mossman.

B.

Penaflor's claims against Priest, Griswold, and the County raise the question of whether Penaflor, whose criminal convictions have not been overturned, may file a civil tort action that challenges the validity of his convictions. We conclude that the answer to this question is "no" and that the Circuit Court properly dismissed Penaflor's Civil Tort Complaint against Priest, Griswold, and the County.

1.

Under Hawai'i law, a person whose conviction remains valid and has not been overturned cannot bring a claim for malicious prosecution.  An essential element of the tort of malicious prosecution is "that the prior [criminal] proceedings were terminated in the plaintiff's favor[.]"  Reed v. City and County of Honolulu, 76 Hawai'i 219, 230, 873 P.2d 98, 109 (1994) (internal quotation marks and citation omitted); see Restatement (Second) of Torts, § 658 (1997) ("To subject a person to liability for malicious prosecution, the criminal proceedings must have terminated in favor of the accused.").

In Heck v. Humphrey, 512 U.S. 477, 484-86 (1994), the United States Supreme Court applied principles underlying the limitation on malicious prosecution actions to suits seeking damages pursuant to 42 U.S.C. § 1983.[2/]  The Court noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."  Id. at 484.  The Court explained that

> [t]his requirement "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."

Id. (citation omitted; "[sic]" and ellipsis points in original). The Court further explained that "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle

---

[2/] 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . .

of a civil suit[,]" and that "similar concerns for finality and consistency," have led the Court to "generally decline[] to expand opportunities for collateral attack[.]" Id. at 484-85 (internal quotation marks and citations omitted). The Court concluded that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Id. at 486.

Based on this reasoning, the Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

Id. at 486-87. Therefore, a claim for damages that necessarily implies the invalidity of a conviction or sentence is not cognizable under § 1983 where the conviction or sentence has not been invalidated. Id. at 487. Accordingly, the Court directed that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

Courts from other jurisdictions have applied Heck's reasoning and analysis to state tort claims that would necessarily imply the invalidity of criminal convictions that have not been overturned. See Yount v. City of Sacramento, 183 P.3d 471, 484 (Cal. 2008) (concluding that the Heck analysis applies to state tort claim for battery); Gibson v. Trant, 58 S.W.3d 103, 112, 116 (Tenn. 2001) (concluding that "the validity of criminal convictions are not designed to be tested in the

10

civil tort arena," in precluding criminal defendants who have failed to obtain post-conviction relief from suing their lawyers for legal malpractice).

2.

We agree with the reasoning and analysis in <u>Heck</u>. Civil tort actions are not appropriate vehicles for challenging the validity of criminal judgments. The need for finality and consistency mandates that a criminal defendant must first overturn his or her conviction before raising civil claims that necessarily require proof that the conviction was invalid. The criminal justice system provides numerous safeguards against improper conviction, including requiring proof beyond a reasonable doubt, the right to jury trial, the right to counsel, the right to direct appeal, and procedures for seeking post-conviction relief. Criminal defendants like Penaflor may challenge their convictions through a direct appeal and through post-conviction proceedings pursuant to HRPP Rule 40, which permits a criminal defendant to challenge a criminal judgment on "any ground which is a basis for collateral attack on the judgment." HRPP Rule 40(a)(1)(v). Allowing a criminal defendant to file a civil suit that challenges the validity of his or her existing conviction would undermine the post-conviction process and contravene the strong judicial policy against inconsistent judgments based on the same underlying facts. We therefore hold that a criminal defendant who has failed to overturn his or her conviction cannot file a civil suit based on claims that necessarily imply the invalidity of the conviction.

Here, Penaflor's Civil Tort Complaint was based on claims that necessarily imply the invalidity of his convictions. Penaflor raised claims for malicious prosecution, false imprisonment, and ineffective assistance of counsel, prayed for a declaratory judgment that the Defendants' alleged acts and omissions violated his rights, and sought his release from custody based on a determination that he was falsely convicted and imprisoned. Despite a direct appeal and numerous petitions

11

for post-conviction relief, Penaflor has failed to overturn his convictions. A judgment in favor of Penaflor on his Civil Tort Complaint would be inconsistent with and would undermine the court decisions which have denied his direct appeal and petitions for post-conviction relief and have upheld his convictions. Given these circumstances, we conclude that the Circuit Court properly dismissed Penaflor's Civil Tort Complaint against Griswold, Priest, and the County.[10/]

## II.

The Circuit Court issued an order declaring Penaflor to be a vexatious litigant (Vexatious Litigant Order) under HRS Chapter 634J. The Vexatious Litigant Order also imposed prefiling restrictions pursuant to HRS § 634J-7(a) and (b) (2016)[11/] on Penaflor's ability to file new litigation on his own behalf as to the claims litigated in this case with respect to Judge Mossman, Griswold, Priest, and the County Department of the Prosecuting Attorney.

---

[10/] We note that while Preist and the County joined in Griswold's motion to dismiss Penaflor's petition for declaratory judgment and motion to declare Penaflor a vexatious litigant, they did not join in Griswold's motion to dismiss the Civil Tort Complaint or file a separate motion to dismiss. However, because the justification for dismissing Penaflor's Civil Tort Complaint against Griswold applies equally to Priest and the County, we affirm the dismissal of the Civil Tort Complaint against Priest and the County. See Bonny v. Society of Lloyd's, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.").

[11/] HRS § 634J-7(a) and (b) provide:

(a) In addition to any other relief provided in this chapter, the court, on its own motion or the motion of any party, may enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this State on the litigant's own behalf without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of this order by a vexatious litigant may be punished as a contempt of court.

(b) The presiding judge shall permit the filing of litigation only if it appears, after hearing, that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in section 634J-4.

Penaflor argues that the Circuit Court erred when it declared him to be a vexatious litigant because he asserts that this was "the first time that he has filed a [c]ivil rights [c]omplaint against the named Defendant(s)." We review a determination that the plaintiff meets the statutory definition for a vexatious litigant under an abuse of discretion standard. Ek v. Boggs, 102 Hawai'i 289, 294, 75 P.3d 1180, 1185 (2003). As explained below, we conclude that the Circuit Court abused its discretion in issuing the Vexatious Litigant Order.

A.

HRS § 634J-1 (2016) defines "vexatious litigant" as follows:

> "Vexatious litigant" means a plaintiff who does any of the following:
>
> (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five civil actions other than in a small claims court that have been:
>
>   (A) Finally determined adversely to the plaintiff; or
>
>   (B) Unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing;
>
> (2) After litigation has been finally resolved against the plaintiff, relitigates or attempts to relitigate in propria persona and in bad faith, either:
>
>   (A) The validity of the determination against the same defendant or defendants as to whom the litigation was finally determined; or
>
>   (B) The cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined;
>
> (3) In any litigation while acting in propria persona, files, in bad faith, unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay; or
>
> (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

HRS § 634J-1.

13

HRS § 634J-1 further defines the term "litigation," as used in HRS Chapter 634J, to mean "any civil action or proceeding, commenced, maintained, or pending in any state or federal court of record." Therefore, it is clear that HRS Chapter 634J is directed at actions taken by a plaintiff in <u>civil actions or proceedings</u>.

B.

In this case, Griswold filed a motion to declare Penaflor a vexatious litigant (Vexatious Litigant Motion), in which Priest and the County joined. In support of his Vexatious Litigant Motion, Griswold cited the claims Penaflor had previously raised in his unsuccessful post-conviction petitions pursuant to HRPP Rule 40 and for writ of habeas corpus under 28 U.S.C. § 2254. Griswold argued that Penaflor was raising the same claims in his Civil Tort Complaint that he raised in his post-conviction petitions. Griswold also argued that Penaflor's Civil Tort Complaint asserted claims that were raised in Penaflor's civil rights complaint that the Circuit Court had sua sponte stricken for lack of jurisdiction. Griswold contended that Penaflor was a vexatious litigant under paragraphs (2) and (3) of the statutory definition.

C.

We conclude that for purposes of HRS Chapter 634J, post-conviction proceedings pursuant to HRPP Rule 40 and for writ of habeas corpus under 28 U.S.C. § 2254 are not "civil actions or proceedings" and thus do not constitute "litigation" under HRS Chapter 634J. HRS Chapter 634J is derived from and substantially similar to the California vexatious litigant statute. S. Stand. Comm. Rep. No. 467, in 1993 Senate Journal, at 978; <u>Ek</u>, 102 Hawai'i at 294, 75 P.3d at 1185. In <u>In re Bittaker</u>, 64 Cal. Rptr. 2d 679, 683-84 (Cal. Ct. App 1997), a California court of appeals held that a petition for writ of habeas corpus filed by a prisoner was not a "civil action or proceeding" within the meaning of the California vexatious litigant statute and thus did

14

not fall within the definition of "litigation" under that statute. It therefore held that the prisoner, who had previously been declared a vexatious litigant, retained "the right to file a petition for writ of habeas corpus unencumbered by vexatious litigant procedures which apply to the filing of a civil action or proceeding." Id. at 680.

Texas appellate courts, construing the Texas vexatious litigant statute, which has the same definition of "litigation" as Hawai'i's statute, have held that when a prisoner files an application for writ of habeas corpus challenging his or her confinement, "the proceeding is criminal, not civil, in nature." Aranda v. District Clerk, 207 S.W.3d 785, 786 (Tex. Crim. App. 2006); Walp v. Williams, 330 S.W.3d 404, 407 (Tex. Ct. App. 2010). Accordingly, such an application for writ of habeas corpus is not a "civil action" for purposes of the Texas vexatious litigant statute and cannot be used to find the prisoner to be a vexatious litigant or as the basis for filing restrictions. Id.

These precedents from California and Texas support our conclusion that for purposes of HRS Chapter 634J, post-conviction proceedings pursuant to HRPP Rule 40 and for writ of habeas corpus under 28 U.S.C. § 2254 are not "civil actions or proceedings" and thus do not constitute "litigation" under HRS Chapter 634J. HRPP Rule 40 authorizes post-conviction petitions which challenge the legality of a defendant's conviction or a defendant's custody based on a conviction. HRPP Rule 40(a)(1) and (a)(2). Because HRPP Rule 40 petitions challenge the validity of a criminal defendant's conviction or confinement, they are basically criminal, and not civil, in nature. Indeed, HRPP Rule 40 itself distinguishes between petitions challenging the legality of a judgment of conviction or post-conviction custody, which fall within the scope of HRPP Rule 40, and "civil" actions which do not. See HRPP Rule 40(c)(3); Hutch v. State, 107 Hawai'i 411, 419-20, 114 P.3d 917, 925-26 (2005).

15

HRPP Rule 40(c)(3) provides:

> Separate Cause of Action. If a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule. However, where a petition seeks relief of the nature provided by this rule and simultaneously pleads a separate claim or claims under a civil rights statute or other separate cause of action, the latter claim or claims shall be ordered transferred by the court for disposition under the civil rules.

(Emphasis added). HRPP Rule 40 also provides that appeals from a judgment in HRPP Rule 40 proceedings may be taken in accordance with procedures for appeals in criminal cases. HRPP Rule 40(h).

Because a petition filed pursuant to HRPP Rule 40 is not a "civil action or proceeding" and does not constitute "litigation" for purposes of HRS Chapter 634J, it cannot be used to support a finding that a person is a vexatious litigant. In other words, HRPP Rule 40 petitions do not "count" for purposes of HRS Chapter 634J. This also means that HRS Chapter 634J cannot be used to impose restrictions on a person's ability to file HRPP Rule 40 petitions. Given the similarity between HRPP Rule 40 petitions and petitions for writ of habeas corpus under 28 U.S.C. § 2254,[12] we conclude that 28 U.S.C. § 2254 petitions for writ of habeas corpus should receive the same treatment under HRS Chapter 634J as HRPP Rule 40 petitions.

D.

Here, Griswold sought a declaration that Penaflor was a vexatious litigant under paragraphs (2) and (3) of the statutory definition. The Vexatious Litigant Motion cited Penaflor's numerous unsuccessful post-conviction petitions pursuant to HRPP Rule 40 and for writ of habeas corpus under 28 U.S.C. § 2254, which challenged the validity of his convictions and sentence.

---

[12] 28 U.S.C. § 2254(a) authorizes a state prisoner to challenge his or her custody as "in violation of the Constitution or laws or treaties of the United States."

Griswold argued that Penaflor was a vexatious litigant because he was raising claims in his Civil Tort Complaint that had been raised and rejected in the proceedings on his post-conviction petitions. However, because Penaflor's post-conviction petitions did not constitute civil actions or proceedings within the meaning of HRS Chapter 634J, they could not be used to support a determination that Penaflor was a vexatious litigant.

The Vexatious Litigant Motion also cited the prior striking of a civil rights complaint filed by Penaflor. However, the civil rights complaint was not made part of the record. In addition, the copy of the order striking the civil rights complaint indicates that there was no determination of the merits of the claims raised, but that the complaint was struck for lack of jurisdiction because it was based on federal statutes. Under these circumstances, we conclude that the record does not support a determination that Penaflor was a vexatious litigant under paragraph 2 of the vexatious litigant definition.

With respect to paragraph 3 of the statutory definition, the Circuit Court did not find in its Vexatious Litigant Order, and the record does not indicate, that Penaflor filed any documents in bad faith or that he engaged in tactics that were frivolous or solely intended to cause unnecessary delay.

Accordingly, we conclude that the Circuit Court abused its discretion in declaring Penaflor to be a vexatious litigant in this case, and we vacate the Vexatious Litigant Order. We note that our decision does not insulate Penaflor from being declared a vexatious litigant should he meet the statutory criteria in future civil litigation. We also note that our holding in this case that a criminal defendant who has failed to overturn his or her conviction cannot file a civil suit based on claims that necessarily imply the invalidity of the conviction will apply to future civil complaints filed by Penaflor.

CONCLUSION

Based on the foregoing, we affirm the Circuit Court's Judgment dismissing the Civil Tort Complaint, and we vacate the Vexatious Litigant Order.

On the briefs:

Crandall Penaflor
Plaintiff-Appellant pro se.

Patricia Ohara
Robyn B. Chun
Deputy Attorneys General
for Defendant-Appellee
Boyd P. Mossman.

David A. Sereno
for Defendant-Appellee
Thomas P. Griswold.

Thomas W. Kolbe
Caleb P. Rowe
Deputies Corporation Counsel
for Defendants-Appellees
Richard A. Priest, Jr. and
County of Maui.